# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## Case No. 24-3223

## Assata Hackman, Appellant v. InductEV, Appellee

## Appeal from the Orders of: Gene E. K. Pratter, U.S.D.J and Paul S. Diamond, U.S.D.J

## In the United States District Court of the Eastern District of Pennsylvania

## Brief of Appellant, Assata Hackman (Pro Se)



4 Pat

RECEIVED

JAN 3 0 2025

U.S.C.A. 3rd. CIR

## Questions Submitted on Appeal

I, Appellant, submit eight appellate questions:

1. Whether I met the procedural requirements to defend against summary

2. Whether I met the merit requirements to defend against summary

3. Whether it is protected conduct for an employee to seek mediation of discrimination claims with their employer.

4. Whether the District Court's exclusion of evidence unfairly prejudiced its Summary Judgement against me (harmless error analysis).

5. Whether the asserted defects of my complaint count I (and therewith counts III, IV, and IX) are curable

6. Whether I should be permitted to amend counts I, III, IV, and IX under the precedents set by this circuit.

    ***Questions 5 and 6 are best argued through my 2024 appellate brief (and corresponding appendix) these are attached in the appendix. ( Vol.2 #7)

## Background I

1. On Mar, 14, 2023, I filed my complaint against the Defendant/Appellee alleging 20 counts of discrimination and hostile work environment on grounds of race, gender, disability and retaliation. 10 of those counts

survived the defendant's motion to dismiss.

Near the close of discovery, I submitted:

A) a motion for partial summary judgement on my retaliation claims

   (complete with record citations, proposed facts and conclusions of law)

B) A brief of the facts and evidence I hoped to present at trial (complete with

   a labelled appendix of those exhibits)

C) Response to the defendant's statement of facts for their motion for

   summary judgement.

The defendant also submitted its own response to my motion for summary

judgement (claiming it was too confused to respond directly to each of my

bulleted facts)

Around 11/25/24, the district court denied my motion for summary

judgement (Doc 92) and granted the defendants summary motion (doc 131)

against my remaining claims (Doc 168):

The district court's opinion characterized my claims as so:

Hiring discrimination based on defendant's choice to not promote me to

senior technician, Hr ignoring my complaints of a coworker who compared

me to chocolate ice cream, another black promoted coworker experiencing

racial hostility, and the company firing me without contractual grounds for

doing so.

In its decision, the district court repeatedly pointed to my lack of evidence, and the futility of the claims I made during discovery.

However, the District Court's opinion gave no indication of consideration towards various references and claims reiterated through my response to the Defendant's statement of facts.

My *claims* of hiring discrimination by failing to reclassify my role between dec 2021 and May 2022 (Doc 141 answer no 129; Doc 137 pp. 335-348, 353-371; Doc 144 pp. 14-18) was straw-manned/ reduced to my non-central e*xample* of prior discrimination: not getting the senior technician position on my date of hire. Likewise, the opinion indicated no address of my submitted evidence (and proposed facts) of the defendant's white employees--- professional profiles, job offers, performance reviews-----and time stamped pdfs concerning my denied reclassification (promotion meetings, complaints, messaging and job description drafts between myself and my supervisor).

The district court's review of my gender- hostile work environment claims did not acknowledge my submitted evidence of witness testimony to coworkers making lewd jokes, my testimony of being physically chased around a lab, or timed stamped pdfs of messages between myself and my

supervisor about two different make coworkers tampering with my work products (Doc 141 answers no. 75, 81, 116, and 125; Doc 141-3 pp 118-119; Doc 137 pp. 45-52, 72-73, 106-109; Doc 131-6 p. 218)

The review of my racial hostile work environment claims additionally bypassed witness evidence of coworkers discussing their right to say the "n-word", time-stamped messages joking about a black coworker as "lazy", or the comparison of HR's messages to me vs the messages and adverse party admission of what she discussed with my supervisor. (Doc 141 Answers no. 50-51, 80,116-117; doc 137 pp. 59-61, 64-65, 211-214, 267-271; Doc 141 Exhibit 4-5; Doc 40-2 pp. 1711-1712, 1715-1718)

The district court's review of my retaliation claims was also narrow. Rather than acknowledging mediation of discrimination claims as a protected activity, the court used the date of the PHRC notice to deny suggestive timing. There was no discussion of the unique pretextual opportunity to terminate me under pretext of settlement, nor any acknowledgement of the company's previous FMLA elections and the first opportunity to fire me (the ending of my FMLA period). Furthermore, my claims of negligence/ and or malicious indifference towards firing me without a finalized agreement were

attributed to the defendant's "mistake[n]" belief that we had reached
settlement.

Missing from the district court's analysis was an explanation of how the
persons "mistakenly" claiming there was a settlement made during
mediation (May Mon Post and Patti Rensel), could do so after: a) attending
the mediation in their official capacities; b) signing an agreement to abide by
the mediation company's processes.

Despite these defects, the district court concluded that the testimony and
notes of the mediators themselves (the only neutral witnesses to the
mediation process) was immaterial to whether the defendant had truly
"mistaken" our dispute as settled at mediation.*

\* I strongly believe this decision created unnecessary
reliance on bias.

## **Background II**

2. Before the summary stage, the district court also dismissed, with prejudice,
   complaint counts I, III, IV and IX which claimed that I had been
   intentionally subjected to workplace racial harassment, and that I had been
   intimidated from making further complaints of workplace racial harassment.

3. My motion to reconsider was dismissed with prejudice. Later my motion for certificate of appealability and both of my motions for leave to amend (regarding counts I, III, IV and IX) were also dismissed

## Jurisdiction

Per the District Court's order, the case has been dismissed and marked closed. The US District Court of the Eastern District of Pennsylvania is located within the third circuit, which (among others) includes US courts in Pennsylvania. The final disposition of the case by a US District Court within the third circuit gives the corresponding US Court of Appeals for the 3rd Circuit jurisdiction.

## Applicable Tests and Clarifying Citations

I. What are the procedural requirements to withstand summary judgement?

According to precedent, the procedural requirement for *withstanding* summary judgement is to have admissible evidence on the record that genuinely disputes your opponent's critical facts. However, to meaningfully *oppose* summary judgement, a party must attach appropriate admissible evidence (even as small as a single affidavit) to refute their opponent's facts:

- "An unopposed summary-judgment motion is not tantamount to a default judgment, because the court still must find for itself that there is no genuine dispute of material fact and that the movant deserves judgment

as a matter of law. Fed. R. Civ. P. 56(a); Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990)."

United States v. Brace, 1 F.4th 137, 143 (3d Cir. 2021)

- "Indeed, 'a single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment...'"

  Paladino v. Newsome, 885 F.3d 203, 209-10 (3d Cir. 2018) (incorporating Lupyan v. Corinthian Colleges, Inc. , 761 F.3d 314, 320 (3d Cir. 2014). and Marino , 358 F.3d at 247 (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ).)

- "Rule 56 sets forth the procedure for requesting and opposing summary judgment. It requires only that a party's request for summary judgment be styled as a motion...In describing the procedures that must be followed to obtain or oppose summary judgment, Rule 56(c) repeatedly refers to the initial request for summary judgment as a motion, but it requires only affidavits or declarations from the opposing party."

  Shelton v. Bledsoe, 775 F.3d 554, 566 (3d Cir. 2015)

- "Arguments mentioned in passing, but not squarely argued are deemed waived."

  Commonwealth of Pa. v. HHS, 101 F.3d 939, 945 (3d Cir. 1996)

- "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

  FRCP 56 (c)(1).

II. <u>What are the pro se procedural exceptions relevant to summary judgement?</u>

According to precedent set by the third circuit, courts tasked with pro se litigants are expected to overlook mismatched titles in favor of the applicable laws/labelling corresponding to the substance of a pleading. Therefore, even a poorly labelled/organized, case-law-citation-lacking response, (if it is timely and includes appropriate facts and evidence citations), should have its substance and applicable laws considered by the court:

- "To be sure, some cases have given greater leeway to pro se litigants. These cases fit into two narrow exceptions. First, we tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings. See, e.g., Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir.2011) ('The obligation to liberally construe a pro se litigant's pleadings is well-established.'). This means that we are willing to apply the relevant legal principle even when the complaint has failed to name it. Dluhos v. Strasberg,321 F.3d 365, 369 (3d Cir.2003)."

  Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2012)

- "Courts must look beyond form to address the substance of a claim. Lewis v. Attorney General of U.S., 878 F.2d 714, 722 n. 20 (3d Cir. 1989) ('A pleading will be judged by its substance rather than according to its form or label...')."

  In re Knapper, 407 F.3d 573, 585 (3d Cir. 2005)

- "A court must make reasonable allowances to protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training. See Higgs v. Att'y Gen. , 655 F.3d 333,339 (3d Cir. 2011)."

  Garrett v. Wexford Health, 938 F.3d 69, 92 (3d Cir. 2019)

- "Accordingly, and particularly in light of Garrett's pro se status and our policy of considering motions based on their substance rather than their title, see Lewis v. Att'y Gen. , 878 F.2d 714, 722 n.20 (3d Cir. 1989) ('A pleading will be judged by its substance rather than according to its form or label.)

  Garrett v. Wexford Health, 938 F.3d 69, 82 n.17 (3d Cir. 2019).

III. <u>What are the specific merit requirements to withstand Summary Judgement on claims of employer (race/gender/ retaliation) discrimination?</u> Generally, PHRA and EEO employment claims are reviewed under the same framework. There exists, within that framework, distinguishments between the analysis of discrimination vs. retaliation vs. Hostile work environment. Though retaliation and general discrimination claims both require a (materially effective) adverse employment action, retaliation requires causal relationship between a claimant's protected conduct and the adverse action. While general discrimination and hostile work environment claims both require the claimant/employee to experience (protected)class-based bias, general discrimination claims require the employee to make employer aware of the situation. Instead of this, Hostile work environment claims require a showing that the behavior was severe enough to affect the average person,

that it effected the plaintiff, and that the plaintiff appropriately used company procedures to prevent the discrimination.

- "'[T]he PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently,' Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir.2002)"

  Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327 (3d Cir. 2015).

- "To state a prima facie case of gender discrimination, the District Court said, Jones was required to 'show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) the particular disciplinary measure was an adverse employment action; and (4) the circumstances of the disciplinary measure give rise to an inference of discrimination.' Jones, 2014 WL 3887747, at *3. We see no error in this formulation. See Geraci v. Moody–Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir.1996) ('The elements of [the] prima facie case ... must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination.')".

  Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 327 (3d Cir. 2015).

- '[adverse action is defined] as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment.' Storey v. Burns Int'l Sec.

Servs., 390 F.3d 760, 764 (3d Cir.2004)"

Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015).

- "First we ask whether the plaintiff has stated a prima facie case of

  discrimination or retaliation; if she has, we ask whether the employer has

  advanced a legitimate reason for its conduct; and finally we give the

  plaintiff an opportunity to prove that the employer's proffered reason is

  pretextual. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994)."

  Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015).

  **this continues to be upheld by Minarsky v. Susquehanna Cnty., 895 F.3d 303 (3d Cir. 2018),

  Komis v. Sec'y of the U.S. Dep't of Labor, 918 F.3d 289, 292-93 (3d Cir. 2019), and Crosbie v.

  Highmark Inc., 47 F.4th 140, 144 and 146 (3d Cir. 2022).


- "'To succeed on a hostile work environment claim [against the

  employer], the plaintiff must establish that 1) the employee suffered

  intentional discrimination because of his/her sex, 2) the discrimination

  was severe or pervasive, 3) the discrimination detrimentally affected the

  plaintiff, 4) the discrimination would detrimentally affect a reasonable

  person in like circumstances, and 5) the existence of respondeat superior

  liability.' Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir.

2013)".

Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017).

**Also in Nitkin v. Main Line Health, 67 F.4th 565, 570 (3d Cir. 2023).

- "The Faragher—Ellerth defense, applies when the employer 'exercised reasonable care to avoid harassment and to eliminate it when it might occur' and the complaining employee 'failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided.' Faragher, 524 U.S. at 805, 118 S.Ct. 2275."

Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 328 (3d Cir. 2015).

IV.    What is the Summary stage treatment of eye-witness testimony--for events not witnessed by the claimant?

- "Moreover, courts may look to conduct directed at individuals other than the plaintiff in determining whether a hostile work environment exists. See Hurley v. Atl. City Police Dep't, 174 F.3d 95, 110 (3d Cir. 1999) (observing that a female employee's work environment may be 'altered as a result of witnessing a defendant's hostility towards other women at the workplace'); Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) ('The mere fact that [the plaintiff] was not present when a racially

derogatory comment was made will not render that comment irrelevant to his hostile work environment claim.').”

Nitkin v. Main Line Health, 67 F.4th 565, 572 n.4 (3d Cir. 2023).

- “We do not agree with the District Court's conclusion that, while plaintiffs' evidence would support a finding that their supervisors used racial epithets out of the presence of black officers, it would not support an inference that the black officers themselves experienced discriminatory treatment. In addition to the fact that there is direct evidence of racial discrimination against blacks, as we have explained, we note as well that evidence of unlawful discrimination may be direct or indirect, and may manifest itself in the presence of the victims or behind their backs.”

Moore v. City of Philadelphia, 461 F.3d 331, 345 (3d Cir. 2006).

- "That said, Davis' claim was not based solely on comments that were directed at others...Although the racist comments involved in this case cannot alone be the basis of a hostile work environment claim, evidence of those comments may be considered in determining whether facially neutral conduct on the part of Valdora and McKee was actually based on Davis' race. See Cardenas,269 F.3d at 261-62"

Caver v. City of Trenton, 420 F.3d 243, 264 (3d Cir. 2005).

V. <u>What is the treatment of hearsay evidence at the Summary stage?</u> According to the third circuit's precedential judgement in 2016, hearsay evidence is admissible at the summary stage if it is admissible at trial, which would include evidence falling under the FRE 803 hearsay exceptions:

- " '[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.' In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial. The proponent need only 'explain the admissible form that is anticipated.' Thus, in ruling on Defendants' motion for summary judgment, the district court should have limited its inquiry to determining if the out-of-court statements Plaintiffs were relying on were admissible at trial, and they clearly were."

  Fraternal Order Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

- "Regardless of Whether the Declarant Is Available as a Witness The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: (1) Present Sense Impression. A statement describing or explaining an event or condition,

made while or immediately after the declarant perceived it. (2) Excited Utterance. A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. (3) Then-Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will. (4) Statement Made for Medical Diagnosis or Treatment. A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause. (5) Recorded Recollection. A record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge. If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."

FRE 803 (1)-(5).

VI.    <u>How does third circuit precedent inform the numerical presentation of Linkedin profiles to defend against summary judgement?</u> Precedent permits this presentation--- as long as the evidence is the best for the point it offers, made under circumstances supporting trustworthiness, and all originals are made available for inspection:

- "...evidentiary gatekeeping...[t]hat function is capably performed by district judges who routinely apply the Federal Rules of Evidence and Daubert jurisprudence. We consider that to be a sufficient safeguard against the menace of unscientific methods and manipulative statistics." Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 76 (3d Cir. 2017)

- "Summaries to Prove Content The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court." FRE 1006

- "IN GENERAL. Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804: (1) the

statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."

FRE 806 (a)

VII.  How does circumstantial evidence inform evaluation of causal connection? While temporal proximity is recognized by the circuit, the third circuit also precedent acknowledges circumstantial evidence—even the timing of the next *opportunity* to retaliate—as elements sufficient to prove causation:

- "The District Court drew its reasoning from our statement in Kachmar that '[w]here there is a lack of temporal proximity, circumstantial evidence of a `pattern of antagonism' following the protected conduct can also give rise to the inference.' See Farrell, 22 F. Supp.2d at 393 (quoting Kachmar, 109 F.3d at 177). However, it failed to note the succeeding sentence, which is all-important: 'These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.' Kachmar, 109 F.3d at 177."

Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)

- "The District Court seemed to have been requiring more than one retaliatory act, or one closer in temporal proximity, or some demonstrative activity, to the exclusion of all other facts or events potentially probative of causation. In doing so, it committed error."

  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

- "This delay of about four months is indeed outside of the three-month time frame we have identified, beyond which the inference of 'unduly suggestive' temporal proximity begins to dissipate. Moody, 870 F.3d at 221. However, looking to timing and other evidence is appropriate. Qin asked Harter in October, before the annual review cycle began, whether he had not been promoted because he was Chinese. Then, mid-way through the review cycle and after reviewing Qin's reviewer comments, Harter agreed with Kurtz to hold off on the promotion. In February, Qin did not receive a promotion at the end of the review cycle, when he received his negative evaluation. In the context of Vertex's set evaluation cycle, calibration process, and promotion schedule, Vertex's February 2019 decision not to promote Qin happened at the first promotion opportunity following his protected activity. Connelly, 809 F.3d at 792-93. A jury, then, could find a causal connection between

Qin's inquiry to Harter and his failure to be promoted."

Qing Qin v. Vertex, Inc., 100 F.4th 458, 477-78 (3d Cir. 2024).


VIII.      What is the standard for temporal proximity?


IX.      <u>What is the construction of a fair hearing?</u> According to the following
three precedents and federal law, a fair civil hearing in the third circuit
requires parties to be granted equal opportunities while being heard in a
meaningful manner:

- 28 USC 453, each US judge must swear to "administer justice without
respect to persons, and do equal right to the poor and to the rich...
faithfully and impartially"

- "One meaning of "impartiality" in the judicial context — and of course
its root meaning — is the lack of bias for or against either party to the
proceeding. Impartiality in this sense assures equal application of the law.
That is, it guarantees a party that the judge who hears his case will apply
the law to him in the same way he applies it to any other party. This is the
traditional sense in which the term is used. See Webster's New
International Dictionary 1247 (2d ed. 1950) (defining 'impartial' as '[n]ot
partial; esp., not favoring one more than another; treating all alike;

unbiased; equitable; fair; just')."

Republican Party of Minn. v. White, 536 U.S. 765, 775-76 (2002)

- "'The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' Mathews, 424 U.S., at 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965))."

Kaley v. United States, 571 U.S. 320, 357 (2014)

X. What is the construction of the *appearance* of a fair hearing? According to the following precedents, in this circuit the appearance of a fair hearing is defined as vital to the legitimacy of judiciary—and consisting of whether an uninvolved, ordinary person could perceive both a *conflict*, and a hypothetical *effect* of that conflict on a judge's adjudication.

- "An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself."

Williams v. Pennsylvania, 136 S. Ct. 1899, 1909 (2016)

- "A party moving for disqualification under § 455(a) need not show actual bias because § 455(a) "concerns not only fairness to individual litigants,

but, equally important, it concerns `the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.'" Alexander, 10 F.3d at 162 (quoting School Asbestos, 977 F.2d at 776)."

In re Kensington International Ltd., 368 F.3d 289, 302 (3d Cir. 2004)

- "The mere existence of a conflict is not enough to bias the judge. Id. The traditional "man on the street" standard is used where "the hypothetical reasonable person under § 455(a) must be someone outside the judicial system." Id. Therefore, when a conflict does exist, impartiality is only questioned when the reasonable person perceives that conflict to have tainted the judge. Id.")

Strategic Technologies, Inc. v. Cooper, Civil Action No. 04-3372 (DMC), 7 (D.N.J. Apr. 28, 2005)

- "See also United States v. Jordan, 49 F.3d 152, 156-57 (5th Cir. 1995) (remarking that average person on street 'is less likely to credit judges' impartiality than the judiciary'); In re Mason, 916 F.2d 384, 386 (7th Cir. 1990) (noting that lay observer is less inclined to presume judge's impartiality than members of judiciary). Thus, we hold that the appearance of impropriety must be viewed from the perspective of the objective, reasonable layperson, who is not necessarily familiar with

asbestos bankruptcies and litigation."

In re Kensington International Ltd., 368 F.3d 289, 303 (3d Cir. 2004).

- "In Alexander v. Primerica Holdings, 10 F.3d 155 (3d Cir. 1993), we stated: impartiality and the appearance of impartiality in a judicial officer are the sine quo non of the American legal system. Because justice must satisfy the appearance of justice, it is our responsibility to exercise our supervisory authority, as reluctant as we always are to do so when it requires the reassignment of a case...We must preserve not only the reality but also the appearance of the proper functioning of the judiciary as a neutral, impartial administrator of justice."

  Government of the Virgin Islands v. Walker, 261 F.3d 370, 376 (3d Cir. 2001).

XI.  What are the demands and limitations placed on the District Court at Summary Judgement? According to precedent and FRCP, the District court is required to avoid credibility determinations and weighing evidence; disregard any evidence (offered by the movant) that a jury wouldn't have to believe; and take all admissible evidence offered by the nonmovant at face value. The scope of the court's analysis must include record citations and the factual allegations of the moving and nonmoving parties:

- "The court need consider only the cited materials, but it may consider other materials in the record."

  FRCP 56 (c) (3).

- "Though the District Court was still required to conduct a full analysis to determine whether granting summary judgment was appropriate, we find no error in the District Court's Rule 56 analysis, which fully addressed plaintiffs' factual allegations."

  Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 614 (3d Cir. 2018).

- "'The non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor.' "

  Paladino v. Newsome, 885 F.3d 203, 209-10 (3d Cir. 2018) (incorporating Lupyan v. Corinthian Colleges, Inc. , 761 F.3d 314, 320 (3d Cir. 2014). and Marino , 358 F.3d at 247 (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

- "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

  FRCP 56 (a).

XII.     What are the pro se procedural exceptions relevant to motions to dismiss?

- "'We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.' Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)". Garrett v. Wexford Health (quoting Shane v. Fauver) 938 F.3d 69, 81 n.16 (3d Cir. 2019); Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008).

**Argument-Analysis of Questions within Precedential Framework**

****the following arguments are meant to read alongside Doc 141 and 137, and are formatted to provide my answers for the questions posed to the appellate court

Question 1. Did I meet the procedural requirements to defend against summary judgement?

Without discussing merit, I met the procedural requirements because I submitted admissible evidence to the case record on several occasions. I even distilled and organized that record into framework aspects of each claim, for example, Doc 40, Doc 15, Doc 137 and Doc 142. ✓Appx Vol. 2 #5   ✓ Appx. Vol. 2 #3

In Doc 40, each subgroup of evidence is labelled with its corresponding hearsay exception from FRE 803. The first few page's list which discrimination type aligns with which evidence group.

In Doc 15, evidence again is cited to and labelled with its corresponding hearsay exception from FRE 803.

Though it opens with a case summary and witness list, the second page of Doc ~~141~~ 142 includes a section titled "Plaintiff's asserted facts and evidence to be presented at trial". As expected, the section consists of claim-critical evidence, separated into the key aspects and material facts of each claim. This section of ~~141~~ 142 uses Claim types (hostile work env. due to gender, retaliation, hostile work env. due to race, etc.), assigns each type a roman numeral, and claim aspects. Each claim aspect ([employee]behaviors, [behavior]motivations, [company] awareness, severity) is placed in bold, with asserted facts and evidence behind it.

Doc 137 (the appendix to doc ~~141~~ 142) organizes all evidence referenced in doc ~~141~~ 142 with an assigned PTE (plaintiffs trial exhibit) number, dates, descriptions and—as applicable—first appearance on the record.

Beyond withstanding summary judgement, I opposed summary by submitting a response where I used direct citations to Doc ~~141~~ 142 (and original evidence locations) in relation to each of the defendant's inaccurate facts. However, the majority of my responses were unaddressed by the district court, with the exception of two (out of 132) that he cited.

As precedent and written rules suggest, there is no requirement that I write

an "opposing brief" to oppose summary judgement, only that I state which facts I oppose and use citations to the record.

I have met the procedural requirements to withstand and to oppose summary judgement.

## Question 2. Did I meet the merit requirements to withstand summary judgement?

I met the merit requirements to withstand summary judgement because the evidence I submitted on the record supported the essential elements of each of my claims.

The claims dismissed at the summary stage fell into 5 main categories: failure to promote due to race, hostile work environment due to gender, hostile work environment due to race, and retaliation for filing a charge of discrimination.

As supported by the references in subsection (III) (of this brief's "Applicable tests..." section), A failure to promote discrimination claim would require: being in a protected class, not receiving promotion or contract modification due to race, and bringing this issue to employer's attention to no avail.

My position within a protected class has been established.

Neither party has disputed my identity as an African American person.

My eligibility for promotion is established in two ways. To prove that the

company extended general eligibility to any employee whose future work would extend beyond their job role: I submitted evidence that the company had a practice of modifying employee contracts to match changing job tasks AND that the company had an established annual process for role and compensation review.

To show that I met those criteria, I provided ample evidence of job tasks given to me that were beyond my job description.

I submitted evidence that I satisfactorily brought both my eligibility and desire to be reclassified to the attention of my employer—through business records of m performance evaluation, meetings and messages with my supervisor to determine new job description, and side comments of my concerns about the process with my now husband.

Neither party disputes that no title change was offered, even 3 months after the conclusion of the employment review process.

I have presented numerical evidence that the company had a history of extending this practice (promoting or modifying contracts) more often to white employees than black employees.

I also presented evidence that the decision makers in my non-promotion had placed unfair requirements on one black employee vs. A white employee--- when considering them for the same title.

While the last two paragraphs refer to events that happened to third parties, the precedent of this circuit allows such events to be included as context to the motivations of an otherwise facially neutral business decision. The weight of this context should be considered by the jury after the summary stage.

Not to rely only on that, I even submitted evidence that my manager discussed my job trajectory with the company—during a meeting called by HR to discuss my complaints of racial bias.

Moving on to Hostile work environment due to race:

I provided admissible hearsay evidence that I had negative ongoing experiences with coworkers that I attributed to race. the head of HR was unwelcoming to complaints of racial bias, and that my formal complaint of company-wide bias was purposefully misrepresented. I also provided adverse party statements—emails to myself, to the company and messages sent directly to my manager---from HR that the company chose not to conduct prompt corrective or preventive action towards my racial bias complaints.

As to following internal processes, I provided evidence that my complaining to my supervisor and then to HR were both satisfactory of the process

outlined in the company's employee handbook.

I also presented circumstantial evidence of the motivations behind my work environment— that my manager discussed my job trajectory with the company—during a meeting called by HR to discuss my complaints of racial bias; that HR was unwelcoming toward racial bias complaints; and that third party witness had observed employees (who contributed to my work environment) making racially insensitive statements.

The severity of this experience was presented through messages to my supervisor in addition to medical notes from my former therapist (she quit her job after her notes were subpoenaed by the defendant).

Moving on to Hostile work environment due to gender:

I provided admissible hearsay evidence of unwanted behavior by coworkers- including being touched on the shoulder, taunted during an inspection, chased around a lab after hours, and witnessing a coworker tampering with my work cabinets.

I also presented admissible hearsay evidence of suggestive work orientation statements by a coworker-- and third-party deposition evidence from one coworker who observed employees (who contributed to my work environment) telling sexually suggestive jokes, emphasizing stereotypes in

their homelife, and depicting sexually offensive images in the workplace. To further this, I provided testimony from a second witness who admitted to male coworker not properly following their documented directions for enclosure and supplier quality.

As to following internal processes, I again provided business records of the company handbook requiring only that these issues be brought to a supervisor or higher in the company. The hearsay evidence of these events also serves as direct evidence of these issues being brought to my supervisor. I also maintain that I made complaints of racial harassment to HR and provided a business record that a meeting did occur around the time originally alleged in my complaint.

Regarding retaliation, I provided adverse party admissions/deposition testimony that only one of the defendant's mediation attendees was present and paying attention during mediation (Heisler admitted to leaving early, and Rensel stated she was leaving details to the lawyers). As well as circumstantial business records and emails that show contradictions between the defendant's performance. One email evidenced the Defendant possessing and sending a drafted agreement (identical to what they claimed to finalize) to mediators ahead of mediation. I placed this in contradiction to evidence of

no record—of the defendant providing this or any other written description of their alleged agreement during the 5-hour mediation or 6 days after same. Another business record showed the defendant had signed and represented understanding of the mediation company's procedures that generally required final agreements to be recorded during the session.

Similar to the references provided in subsection VII of this brief's citation section—temporal proximity can be compensated here. This is because I presented evidence of an FMLA form where the company agreed to hold my job while I was on sick leave, and the first *opportunity* to terminate me would be after my leave ended. This knowledge would be supported by the defendant's circumstantial request that my doctor provide a return-to-work letter *before* receiving a settlement contract.

This context also builds evidence of the defendant's assertion (of a mistaken termination at worst) to be pretext.

Attending mediation created a win-win for retaliation because settlement would include resignation and the company could choose to falsely allege settlement to legitimize forced termination.

Common sense says most employers would not want a claimant to have ease in gathering evidence against them and access to their database is completely

cut off through termination.

These benefits would turn even a mistake into reckless indifference or malicious negligence. When faced with an opportunity to get rid of an employee who complains of discrimination—bias towards that employee prevented Defendants from doing their due diligence with mediation contracts and communications to truly confirm if an agreement had been reached.

## Question 3. Is it protected conduct for an employee to seek mediation of discrimination claims with their employer?

It should be protected conduct for an employee to attend employment discrimination mediation because mediation is a form of pursuit for claims of discrimination. In the same vein that employees are entitled to oppose discrimination and pursue claims of discrimination without retaliation, all avenues for said pursuit (mediation, lawsuit, EEOC complaint) should be available without the threat of repercussion for doing or the other.

## Question 4. Did the District Court's exclusion of evidence prejudice its Summary Judgement against me (harmless error analysis)?

For all forgoing reasons, I assert that the district court committed harmful evidentiary error in its Summary Judgement determination. It doesn't matter

what the weight is or the credibility determinations, the point is that evidence has been presented that disputes the material facts of the defendant's summary motion. The district court's assertion that I presented no supporting evidence (largely relied on to determine summary) is incorrect, excludes precedentially meritorious and admissible evidence, and unfairly prejudiced its decision of summary judgement

Sincerely,

Assata Hackman (Pro Se)

what the weight is or the credibility determinations, the point is that evidence has been presented that disputes the material facts of the defendant's summary motion. The district court's assertion that I presented no supporting evidence (largely relied on to determine summary) is incorrect, excludes precedentially meritorious and admissible evidence, and unfairly prejudiced its decision of summary judgement

Sincerely,

Assata Hackman (Pro Se)

# Appendix Vol 1

Index

Court orders

Doc 50 ... p. 2

Doc 59 ... p. 3

Doc 157 ... p. 4

Doc 162 ... p. 6

Doc 163 ... p. 7

Doc 164 ... p 8

Doc 166 ... p 9

Doc 168 ... p 10

Notice of Appeal

Doc 169 ... p 22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| ASSATA ACEY, | | : | |
| | *Plaintiff* | : | **CIVIL ACTION** |
| v. | | : | |
| | | : | |
| INDUCTEV, | | : | |
| | *Defendant* | : | **No. 23-1438** |

### O R D E R

**AND NOW**, this _27th_ day of February 2024, upon consideration of Plaintiff's Motion

for Summary Judgment (Doc. No. 5) and Defendant's Motion to Dismiss for Failure to State a

Claim (Doc. No. 10), for the reasons explained in the accompanying memorandum, it is hereby

**ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 5) is **DENIED**;

2. Defendant's Motion to Dismiss (Doc. No. 10) is **GRANTED IN PART** and **DENIED**

   **IN PART** as follows:

   a. Counts I, II, III, IV, IX, XIV, and XX are **DISMISSED WITH PREJUDICE**;

   b. Counts XIII, XV, and XVI are **DISMISSED WITHOUT PREJUDICE**;

   c. The Motion to Dismiss (Doc. No. 10) is **DENIED** with respect to Counts V,

   VI, VII, VIII, X, XI, XII, XVII, XVIII, and XIX.

**BY THE COURT:**

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASSATA ACEY, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| INDUCTEV, | : | |
| *Defendant* | : | **No. 23-1438** |

## O R D E R

AND NOW, this _____ day of March 2024, upon consideration of Plaintiff's Motion for

Reconsideration (Doc. No. 51), it is **ORDERED** that the Motion for Reconsideration (Doc. No.

51) is **DENIED WITH PREJUDICE**.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ASSATA ACEY | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Civ. No. 23-1438 |
| | : | |
| INDUCTEV | : | |
| **Defendant.** | : | |
| | : | |

## O R D E R

On August 23, 2024, Defendant filed a Motion for Summary Judgment in which it argued, *inter alia*, that Summary Judgment is appropriate because "Plaintiff agreed to release her claims against Defendant and resign in exchange for $50,000." (Doc. No. 131 at 27.) I will construe this portion of Defendant's Motion as a Motion to enforce the Parties' agreement. Plaintiff apparently disputes the existence of an enforceable agreement. (Doc. No. 141 at 2.) Accordingly, I shall hold an evidentiary hearing on Defendant's Motion. See Saudi Basic Inds. v. Exxon Corp., 364 F.3d 106, 113 (3d Cir. 2004) ("Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.").

**AND NOW**, this 22nd day of October, 2024, it is hereby **ORDERED** that:

1. The Final Pretrial Conference scheduled for November 13, 2024, is **CANCELLED**.

2. The Court shall **CONDUCT** an evidentiary hearing at **11 a.m.** on

**November 13, 2024**, in **Courtroom 14A**, in the United States District Court, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania, 19106, to determine whether the Parties reached a settlement agreement.

3. The Parties shall **PRESENT** evidence as to the existence and enforceability of a settlement in this matter; and

4. The Court expects to hear, *inter alia*, from the mediators who conducted the September 19, 2022 mediation at which the Parties reached the claimed agreement.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ASSATA ACEY** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 23-1438** |
| | : | |
| **INDUCTEV** | : | |
| **Defendant.** | : | |
| | : | |

## O R D E R

**AND NOW**, this 23rd day of October, 2024, it is hereby **ORDERED** that Plaintiff's

Motion for Order to Deem Facts of Doc. 92 as Uncontested (Doc. No. 146), Motion for Judicial

Notice of Doc. 64 (Doc. No. 149), and Motion for Clarification (Doc. No. 158) are **DENIED**.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **ASSATA ACEY** | | : | |
| | **Plaintiff,** | : | |
| | | : | |
| **v.** | | : | **Civ. No. 23-1438** |
| | | : | |
| **INDUCTEV** | | : | |
| | **Defendant.** | : | |
| | | : | |

### O R D E R

    **AND NOW**, this 23rd day of October, 2024, upon consideration of Defendant's response

to Plaintiff's now-denied Motion for Clarification (Doc. Nos. 159, 161, 162), the Court **ORDERS**

Defendant to serve a copy of this Order on Mediators Tracy Hornig and Barbara Foxman.  The

Mediators **SHALL** attend the November 13, 2024 hearing at which they will likely testify.

                          **AND IT IS SO ORDERED.**

                          */s/ Paul S. Diamond*
                          Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ASSATA ACEY** | : | |
| Plaintiff, | : | |
| | : | |
| **v.** | : | **Civ. No. 23-1438** |
| | : | |
| **INDUCTEV** | : | |
| Defendant. | : | |
| | : | |

## O R D E R

**AND NOW**, this 23rd day of October, 2024, it is hereby **ORDERED** that the current Scheduling

Order (Doc. No. 130) is **SUSPENDED** pending further Order of this Court.

**AND IT IS SO ORDERED.**

/s/ Paul S. Diamond
Paul S. Diamond, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **ASSATA ACEY** | | : | |
| | **Plaintiff,** | : | |
| | | : | |
| **v.** | | : | **Civ. No. 23-1438** |
| | | : | |
| **INDUCTEV** | | : | |
| | **Defendant.** | : | |
| | | : | |

### O R D E R

**AND NOW**, this 12th day of November, 2024, it is hereby **ORDERED** that

the evidentiary hearing scheduled for **11 a.m.** on **November 13, 2024**, in

**Courtroom 14A**, is **CANCELLED** pending a further Order of this Court.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ASSATA ACEY,** | : | |
| | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| **INDUCTEV,** | : | |
| | : | |
| *Defendant.* | : | |
| | : | **No. 2:23-01438-PD** |

### Notice of Appeal

Plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for

the Third Circuit from three orders of the US District Court of the Eastern District of

Pennsylvania:

    A.  Doc 59, denying plaintiffs motion for reconsideration with prejudice

    B.  Doc 50, dismissing charges I, III, IV, and IX of plaintiff's complaint with prejudice

    C.  Doc 168, granting summary judgement in favor of the defendant


The Appeal is generally made on the following 8 issues:

### Regarding order of Doc 168

1.  Whether the court adequately considered and constructed plaintiff's filed responses to the
    defendant's motion for summary judgement.

2.  Whether the court adequately considered and constructed references to the case record
    provided in plaintiff's responses (both the context provided in those references and their
    raw exhibits).

3.  Whether third circuit precedent would have required the court to take wider construction

of plaintiff's claims due to pro se status.

4. Whether the testimony of the mediators would shed light on the conscious malice (ruled as a nondiscriminatory mistake by the court) of the defendant when they and their counsel chose to describe the case as settled after mediation.

5. Whether the plaintiff provided adequate documentation throughout the case record to support her claims (especially pretrial memoranda –brief and exhibits).

### Regarding Orders of Doc 50 and 59

6. Whether the third circuit precedent for Pro Se litigants would have permitted plaintiff to have an opportunity to amend those charges dismissed in Doc 50.

7. Whether the court adequately considered and constructed references to the case record provided in Doc 51, in plaintiff's motion for reconsideration (both the context provided in those references and their raw exhibits).

8. Whether the evidence referenced in plaintiff's motion for reconsideration (Doc 51) had been qualified as new evidence at that time, through their introduction in supporting/responsive briefs—as having been received from the Defendant during post-complaint discovery.

9. Whether the alleged critical errors in plaintiff's supporting/responsive briefs (Doc 15 (p. 1-4, p.11-18), and Doc 40 (p.1-10, p.16-31)) and re-presented in plaintiff's motion for reconsideration, can be remedied in an amended complaint.

-

Sincerely,

Assata Acey Hackman /s/

Assata Acey (Pro Se)

5121 Brown St,

Philadelphia, PA, 19139

770-231-1017

aceyassata@gmail.com

Date: 11/27/2024